**NAVIGAZIONE GENERALE ITALIANA v. ELTING, Collector of Customs of Port of New York.**

No. 239.

Circuit Court of Appeals, Second Circuit.

March 8, 1937.

Lamar Hardy, U. S. Atty., of New York City (Charles J. Nager, Asst. U. S. Atty., of Rye, N. Y., of counsel), for appellant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Delbert M. Tibbetts, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a judgment for the plaintiff in an action to recover fines imposed for unlawfully bringing four aliens into the United States. The same question determines each case; that is, whether the alien was "returning from a temporary visit abroad" within the meaning of section 2(d) of the Quota Act of 1921 (42 Stat. 5). The regulations adopted under that act (section 2 (a) construed

the words, "temporary visit abroad," as meaning "absence in any foreign country (without relinquishment of domicile) not exceeding six months in duration," and set up a presumption that the alien had abandoned his domicile if he stayed away any longer; which, however, he might overcome by evidence "satisfactory to the appropriate immigration officers." Rule 9, subdivision G., paragraph 1, of the rules of February 1, 1924, was in substance the same. • Section 6 of the act (as added by Act May 11, 1922, § 3, 42 Stat. 540) imposed a fine of two hundred dollars for bringing in such an alien, which could not be remitted "unless it appears to the satisfaction of the Secretary of Labor that such inadmissibility was not known to, and could not have been ascertained by the exercise of reasonable diligence by" the carrier "prior to the departure of the vessel." The question in each case is whether the Secretary of Labor was justified in concluding that the carrier could by reasonable care have found out that the alien was inadmissible.

■ The first alien arrived on June 10, 1924. Upon his examination by the Board of Special Inquiry he produced an Italian passport, bearing the visa of an American consul, which described him as returning from an unrelinquished domicile. On his examination he said that he had first come here in April, 1910, fourteen years before, and had stayed uninterruptedly for twelve years, leaving in July, 1922; that he had declared his intention to become a citizen in 1919, but had lost the papers. He had worked as a tailor in Newark and had gone back to sell a piece of land which he owned in Italy, but had been detained because of delay in making the sale. He had applied to the American consul in January, 1923, but had never got any reply. Although the alien had been here for so long the purpose of his visit was not well accounted for. He could produce neither his declaration, nor any permit, and his explanation depended upon his uncorroborated word. The same was true as to the length of his stay, which may have been, as the Board of Review suggested, because he was working at his trade in Italy, though there is no evidence that he did. The carrier in accepting him with no confirmation of his explanation and in the face of the presumption, seems to us to have taken the risk of his exclusion.

■ The second alien also had an Italian passport bearing the visa of the American consul. He had first come to the United States in 1912, had left in 1915 to serve in the Italian army; came back in 1920, and left again on July 21, 1921. He came back on May 22, 1923, after almost as long an absence as the alien just mentioned. But the circumstances in his favor were much stronger. Immediately after his first return, in March, 1920, he had declared his intention to become a citizen, which he presented to the Board. Just before he left, in the summer of 1921, he had bought an ice cream, candy and soft drink business for $260, the bill of sale for which he produced. He gave as his excuse for leaving within a month thereafter that he became sick and had been told by his doctor to go to Italy at once. He left his brother, Angelo, in charge of the business, and meant to stay away only two or three months, but his sickness continued until 1922. Early in 1923 he had married, and would have brought back his wife, if the authorities had allowed him to do so. His brother had meanwhile sent him two or three hundred lire a month out of the business. There can be no reasonable doubt that when he left the alien meant to come back; the bill of sale clearly proved that, and the recent declaration of intent confirmed it. He had not then at least "relinquished his domicile."

True, during his absence he might have changed his mind and decided to remain in Italy and then changed it back again and decided to return here. But if the carrier was reasonably assured that he meant to come back when he left, it seems to us too severe to ask it to infer that he had twice so changed his mind merely from the fact that he stayed nearly two years.

■ The third alien first came to the United States in 1911 and remained until 1915, when he went back to serve in the Italian army. He returned on April 17, 1920, and left again on February 7, 1923. He too had a passport bearing a visa, like the others; but he had never declared his intention to become a citizen. He had a wife and two children, aged two months and three years, in Italy, but curiously enough he did not give as his reason for wishing to return any desire to see them—there was only one child then—but to see his father. He was incompletely examined, because the Board of Special Inquiry discovered that he had had an attack of epilepsy on his arrival. The certificate of the official medical examiner declared that it

was impossible to say that this could have been detected at embarkation, and the Secretary could not therefore properly, and did not, impose any fine for that reason. But when he undertook to do so because the carrier ought to have learned that in addition the alien was not returning from a temporary visit, the proper foundation did not exist, because the examination had not been completed. Fairness demanded that it should have been if a fine was in mind. The alien disappears when the carrier takes him back; the examination before the Board is the only chance to learn his story; it ought to bring out all the facts.

The fourth alien was a fisherman, arriving on March 3, 1924, with a passport viséd like those of the other three. He had been gone a year and two months and said that he had lived in the United States ten years, between 1912 and 1922, in Trenton and San Francisco; that he had declared his intention to become a citizen, which he showed; that he had left to get married which he did about four months after he reached Italy; and that he had meant to stay a year when he left, but that he had made no attempt to bring his wife with him. The alien's absence was not so long as in the first case and there may have been some corroboration in his declaration, though its date does not appear. But that is all; he gave no reason for not bringing back his wife or at least trying to, and his occupation was not one which tied him to any place. We think that the carrier took him at its risk.

Judgment is reversed as to the first and fourth aliens; it is affirmed as to the second and third.